UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENDELL SHAREEK MCFADDEN, | Civil Action No. 17-11670 (KSH/CLW) |
| Plaintiff, | |
| v. | OPINION |
| PASSAIC COUNTY, *et al.*, | |
| Defendants. | |

**HAYDEN, United States District Judge:**

**I.    INTRODUCTION**

This matter comes before the Court upon separate motions to dismiss filed by: (i) Defendants Corizon Health of New Jersey, Corizon Health, and CHI Company (collectively, "Corizon") (at ECF No. 31); and (ii) Defendant Joseph Girone ("Girone") (at ECF No. 56).  In their respective motions, Corizon and Girone each move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts III and IV of Plaintiff Kendell Shareek McFadden's ("McFadden's") Fourth Amended Complaint (at ECF No. 30).  For the reasons detailed below, both motions as to Count III only; that is the lone federal claim asserted in McFadden's Fourth Amended Complaint and dismissal of that claim is with prejudice.  The Court will not exercise supplemental jurisdiction over McFadden's additional state law claims, including Count IV, and will instead remand this matter to state court.

**II.   BACKGROUND**

On June 8, 2015, McFadden, then a Passaic County Jail ("PCJ") inmate, sustained significant burns after a pot of boiling water accidentally fell on him while he was working in PCJ's kitchen.  (*See*, *e.g.*, Corizon's Br. in Supp. of Mot. to Dismiss, ECF No. 31-5 at PageID:

1031). By way of this lawsuit, McFadden seeks monetary compensation for, *inter alia*, the purported lack of appropriate medical treatment he subsequently received from PCJ-affiliated medical personnel, including Corizon and Girone. (*See*, *generally*, ECF No. 30). The Honorable Cathy L. Waldor, U.S.M.J., succinctly summarized the less-than-straightforward procedural history culminating in McFadden's filing of his current complaint as follows:

> [McFadden initiated this lawsuit via the filing of his original complaint] in New Jersey Superior Court on February 24, 2017, alleging state and federal claims . . . . On April 6, 2017, [Corizon] removed that action to federal court. [(*See* Civil Action No. 17-2332 at ECF No. 1).] The case was remanded to state court because all Defendants did not unanimously consent to the removal, and [that earlier, related] federal action was terminated. [(*See* Civil Action No. 17-2332 at ECF No. 8).] Subsequently, [Defendants Passaic County, Anthony J. De Nova III, Passaic County Sheriff Richard H. Berdnick, Michael Tolerico, Richard A. Ashley, Joshua S. Rojas, Joseph Greco, and Gregory DeFranco (the "Passaic County Defendants")] filed a Motion to Dismiss [in state court], which was partially granted without prejudice, with leave to amend the complaint. (ECF No. 20-20). [McFadden] filed an Amended Complaint in state court on November 13, 2017. (ECF No. 20-1 at p. 3). On November 15, 2017, [McFadden] filed a Second Amended Complaint in the state court action, which [purportedly] clarified that certain counts applied only to [Corizon]. (ECF No. 20-1 at p. 4).
>
> On November 16, 2017, the Passaic County Defendants, with the consent of all Defendants, removed the Amended Complaint to this Court. (ECF No. 1). On November 29, 2017, [Corizon], with the consent of all Defendants, removed [McFadden's] Second Amended Complaint to this Court. (ECF No. 3). [McFadden responded by filing a motion to remand this matter to state court on December 11, 2017. (ECF No. 4). In addition, subsequent] to the removal of the action to this Court, [McFadden] filed a Third Amended Complaint in state court. (ECF No. 20-1 at p. 6). This Third Amended Complaint [was never] filed in the instant federal action. [McFadden] then filed a Motion for Leave to File a Fourth Amended Complaint in this action on February 5, 2018. (ECF No. 13). On February 21, 2018, [Judge Waldor] terminated [McFadden's] Motion[s for Leave to File a Fourth Amended Complaint and to remand this matter to state court] and directed [McFadden] to refile

> [those] Motion[s] consistent with this Court's local rules and protocols.

(ECF No. 29). Thereafter, on April 11 and 12, 2018, respectively, McFadden filed renewed motions: (i) for leave to file the Fourth Amended Complaint (at ECF No. 20); and (ii) to remand this matter to state court (at ECF No. 21). Corizon opposed both motions (at ECF Nos. 23 and 24). Judge Waldor granted McFadden's motion to file his amended pleading on June 20, 2018 (at ECF No. 29), and thereafter denied McFadden's remand motion (at ECF No. 38).

On June 22, 2018, McFadden filed his four-count, Fourth Amended Complaint (at ECF No. 30). Count I (negligence by public entities), Count II (willful, wanton, and reckless conduct by public entities), and Count IV (denial of medical care in violation of N.J. Const. art. 1, ¶ 12), all seek relief under state law; Count III (denial of medical care in violation of U.S. Const. amend. VIII) is the only count which asserts a cause of action under federal law. (*Id.* at p. 17). Count III is asserted against Corizon and Girone only. (*Id.*; *see also* ECF No. 60).

McFadden's pleading contains the following pertinent factual allegations: Corizon is a for-profit private entity that provides medical services to jails and prisons, including PCJ. (ECF No. 30 at ¶¶ 22-23). Girone is an agent, servant and/or employee of Corizon who provides medical care to PCJ inmates.[1] (*Id.* at ¶¶ 24-26). On June 8, 2015, Plaintiff was an inmate confined at PCJ. (*Id.* at ¶ 31). At an unspecified time on that day, a large pot of boiling water tipped over and severely burned McFadden while he was working in PCJ's kitchen. (*Id.* at ¶¶ 33, 45). In response, McFadden "ran to the jail infirmary" for medical treatment. (*Id.* at ¶ 48). Girone and another Corizon-affiliated nurse, identified in McFadden's pleading as Tom Roe, were

---

[1] McFadden's pleading fails provide any further details about Girone's professional background and specific roles within Corizon and at PCJ. It is nonetheless clear that Girone is a Corizon-affiliated doctor who works in PCJ's infirmary. (*See* ECF Nos. 31 and 56).

present in the infirmary at that time. (*Id.* at ¶¶ 50-51). Neither Girone nor Nurse Roe examined McFadden, notwithstanding that they were "aware that [McFadden] had been burned [on] much of his body including his legs, hands and forearms." (*Id.* at ¶¶ 53-54). Girone and Roe instead "advised [McFadden] to put ice packs [stet] and/or ice on his burns." (*Id.* at ¶ 56). "Neither [Corizon nor Girone further] acted to secure medical treatment [for McFadden.]" (*Id.* at ¶ 59). At the "sole direction and/or instigation [of Roe or another individual named Enid Mitchell], an ambulance was called" and McFadden "was taken via ambulance to [to the emergency center] at St. Joseph's Regional Medical Center in Paterson[, New Jersey]." (*Id.* at ¶¶ 58-61). McFadden "remained approximately thirty minutes at St. Joseph's" for medical treatment. (*Id.* at ¶ 66). While there, McFadden's "burns were only partially dressed and or bandaged" and he "was supplied only with painkillers[.]" (*Id.* at ¶¶ 64-65).

Upon arriving back to PCJ from Saint Joseph's on June 8th, Girone and Roe were advised "of blistering and other evidence of burns on [McFadden's] legs, forearms and hands" and McFadden himself told Girone and Roe about the "severe pain" he was then experiencing. (*Id.* at ¶¶ 69-70). At that time, an individual in the infirmary – possibly Girone – took McFadden's pulse. (*Id.* at ¶ 72). McFadden was not otherwise "examined upon his return to [PCJ on June 8th]" and "was not treated in accordance with his discharge instructions [from Saint Joseph's.]" (*Id.* at ¶¶ 71-72). Girone and Roe left PCJ on June 8th without giving pain medication to McFadden and without changing McFadden's dressings. (*Id.* at ¶¶ 73-75).

On the following day, June 9, 2015, McFadden "observed blisters on the uncovered portions of his arms, hands and legs." (*Id.* at ¶ 78). McFadden notified an unnamed corrections officer of that condition at "roughly nine in the morning." (*Id.* at ¶ 80). "[A] nurse employed by [Corizon] saw" McFadden "at noon." (*Id.* at ¶ 82). That nurse "removed [McFadden's]

4

bandages and/or dressings and commenced the first examination of [McFadden's] burns [by a Corizon-affiliated individual]." (*Id.* at ¶ 88). McFadden's injuries were subsequently examined by a "female doctor . . . employed by [Corizon]." (*Id.* at ¶ 89). Thereafter, at an unspecified time on that same day, McFadden was taken "to the burn center at Saint Barnabas [in Livingston, New Jersey,] where he remained from June 9, 2015 until June 22, 2015." (*Id.* at ¶ 96). McFadden claims that Corizon "had a pecuniary motive to avoid sending [McFadden] to St. Barnabas" because that hospital "does not have a contract to supply care to inmates at [PCJ.]" (*Id.* at ¶ 97). McFadden avers that this is the reason he was initially sent to Saint Joseph's, notwithstanding that "St. Joseph's Regional Medical Center lacks even a self-designated burn unit, while Saint Barnabas has a burn unit verified by the American Burn Association and the American College of Surgeons." (*Id.* at ¶ 94).

After his release from Saint Barnabas on June 22, 2015, McFadden "was admitted to the infirmary at [PCJ], where he stayed for two months." (*Id.* at ¶ 103). During that time, McFadden "was not treated in accordance with his discharge instructions from Saint Barnabas." (*Id.* at ¶ 99). Corizon and Girone, among others, "prevented [McFadden] from having any [of his scheduled] follow up visits at Saint Barnabas." (*Id.* at ¶ 101). In addition, "[t]he medication Saint Barnabas gave to [McFadden] was confiscated upon his return to [PCJ]." (*Id.* at ¶ 108). Corizon and Girone, among others, "only supplied [McFadden] with an oral pain medication a week after his return to [PCJ]" and "waited a month to provide [McFadden] with any topical medication[.]" (*Id.* at ¶¶ 112, 114). In his first week in PCJ's infirmary, McFadden was "denied any pain medication at all" notwithstanding that he "described his immense pain to[, *inter alia*, Corizon, Girone, and Roe]." (*Id.* at ¶¶ 110-11).

McFadden claims that the foregoing alleged failures of Corizon and Girone "to provide medical care constituted deliberate indifference to [his] serious medical needs in violation of U.S. Const. amend. VIII." (*Id.* at ¶ 150). McFadden asserts that "[a]s a direct and proximate result of the denial of medical care, [he] suffered injuries causing permanent disability, permanent significant disfigurement, [and] permanent loss of bodily function." (*Id.* at ¶ 163). He further claims that he has been harmed by Corizon and Girone's general policy and custom "[to deny] medical care[,]" and by those defendants' simultaneous failure to properly train and supervise other Corizon personnel. (*Id.* at ¶¶ 157-62).

On July 16, 2018, Corizon filed its current Rule 12(b)(6) motion to dismiss Counts III and IV of McFadden's Fourth Amended Complaint. (*See* ECF No. 31). Corizon asserts that vague and conclusory allegations in that pleading "are insufficient to state a civil rights claim for failure to provide medical care." (*Id.* at PageID: 1037). McFadden filed opposition to Corizon's motion on September 14, 2018. (ECF No. 41). On January 17, 2019, Girone – after obtaining leave from the Court to do so – filed a separate Rule 12(b)(6) motion; Girone's motion advances the same legal arguments that Corizon did in its earlier-filed motion to dismiss. (ECF No. 56). McFadden filed opposition to Girone's motion on February 25, 2019; McFadden's February 25th opposition brief reiterates substantially the same arguments that he previously advanced in his September 14, 2018 brief opposing Corizon's earlier-filed motion to dismiss. (ECF No. 63.)

## III. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move for dismissal of a "claim for relief in any pleading" that "fail[s] to state a claim upon which relief can be granted." When ruling on such a motion, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable

6

to the plaintiff." *Phillips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

IV. ANALYSIS

a. Section 1983, Generally

As noted above, McFadden asserts that Corizon and Girone acted with deliberate indifference to his serious medical needs after he was burned in PCJ's kitchen on June 8, 2015. This claim is actionable under federal law pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

7

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. To obtain relief under this statute, a plaintiff must establish: (i) that one of his rights secured by the Constitution or laws of the United States was violated; and (ii) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (noting that Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights).

### b. Section 1983 Denial of Medical Care Claims, Specifically

In the seminal decision of *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court made clear that: (i) "the government [is obligated] to provide medical care for those whom it is punishing by incarceration[;]" (ii) "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment[;]" and (iii) "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."[2] *Id.* at 103-05.

In accordance with *Estelle* and its progeny, McFadden, as an incarcerated plaintiff asserting a Section 1983 claim for inadequate medical care, must show the existence of a serious medical

---

[2] Non-convicted pretrial detainees are afforded substantially the same protections under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) ("pretrial detainees' [are protected] from 'punishment' under the Fourteenth Amendment, and convicted inmates' [are protected] from punishment that is 'cruel and unusual' under the Eighth Amendment.").

need and that facility staff demonstrated deliberate indifference to that medical need.[3] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017); *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Serious medical needs include "one[s] . . . diagnosed by a physician as requiring treatment or one[s] that [are] so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mattern*, 657 F. App'x at 139 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). A prison official acts with deliberate indifference to those needs if he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (citation omitted).

Here, the Court agrees with the parties that McFadden's current pleading demonstrates that his medical needs were sufficiently serious for purposes of obtaining relief under Section 1983. (*See*, *generally*, ECF Nos. 31, 41, and 56). Indeed, McFadden indicates that he "was admitted to the burn center at Saint Barnabas where he remained from June 9, 2015 until June 22, 2015 [to

---

[3] McFadden's Fourth Amended Complaint specifically indicates that his Section 1983 claim arises under the Eighth Amendment (*see* ECF No. 30 at ¶ 150); this implicitly suggests that McFadden was a convicted prisoner in and around June 2015. In his September 14, 2018 opposition brief, however, McFadden avers that his federal claim is rooted in the Fourteenth Amendment, thus indicating that he was instead a pretrial detainee during that period. (ECF No. 41 at PageID: 1096-97). While this apparent drafting error is concerning, particularly as this is McFadden's *fourth* revised pleading, it is also largely immaterial to the Court's current analysis. Ultimately, regardless of whether McFadden was a pretrial detainee or a convicted prisoner, his Section 1983 denial of medical care claim is analyzed under *Estelle's* deliberate indifference standard. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *accord Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) ("decisions interpreting the Eighth Amendment serve as 'useful analogies' [for similar claims that instead arise under the Fourteenth Amendment].") (quoting *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1080 (3d Cir. 1976)); *but see Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) ("at a minimum, the 'deliberate indifference' standard of *Estelle v. Gamble*, must be met" at an institution housing pretrial detainees).

receive medical treatment]." (ECF No. 30 at ¶ 96). Whether McFadden has sufficiently alleged that Corizon and Girone acted with constitutionally violative "deliberate indifference" to those serious medical needs is a far closer call, particularly because his complaint unequivocally indicates that he received extensive and long-term medical treatment for his burns.

"Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227–28 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). Indeed, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* at 227 (3d Cir. 2017) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Courts accordingly afford deference to prison medical authorities in the diagnosis and treatment of patients, and "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *Id.* (quoting *Inmates of Allegheny Cty.*, 612 F.2d at 762 (3d Cir. 1979)). In that respect, neither a prisoner's personal, subjective dissatisfaction with the care he has been provided, nor his disagreement with the professional judgment of trained medical staff, is sufficient to establish deliberate indifference. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x. 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

That said, "there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Palakovic*, 854 F.3d at 228. "[P]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less

efficacious treatment of the inmate's condition." *Id.* (citations and internal quotations omitted). They cannot "deny reasonable requests for medical treatment . . . [when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Id.* (citing *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). And, "knowledge of the need for medical care may not be accompanied by the intentional refusal to provide that care." *Id.* (citations and alterations in original omitted).

   c. **Application**

Again, there is no dispute that McFadden sustained burns on June 8, 2015 while working in PCJ's kitchen.[4] McFadden's Fourth Amended Complaint likewise indicates that his resulting injuries were serious. That said, the factual allegations in McFadden's present pleading preclude the Court from drawing the reasonable inference that Corizon or Girone acted with constitutionally violative "deliberate indifference" to those serious medical needs.

The core allegations regarding the medical treatment McFadden received in response to his June 8, 2015 accident include the following: McFadden was initially sent to the emergency room at Saint Joseph's Hospital for medical treatment the same day that he was injured; McFadden was discharged from that hospital after thirty minutes and returned to PCJ; on June 9th, McFadden woke up in PCJ's infirmary, and was examined by a Corizon nurse within three hours of telling a PCJ corrections officer that he had blisters on his arms, hands, and legs; shortly thereafter, an unnamed Corizon doctor examined McFadden, at which point he was sent Saint Barnabas – which has a specialized burn unit – for additional off-site treatment; McFadden stayed at Saint Barnabas from June 9, 2015 through June 22, 2015; McFadden thereafter stayed in PCJ's infirmary for an

---

[4] In his September 14th opposition brief, McFadden expressly indicates that he sustained second-degree burns on 40% of his body. (*see* ECF No. 41 at PageID: 1096). This specific information, however, is not alleged in McFadden's Fourth Amended Complaint.

11

additional two months.

The foregoing allegations demonstrate that McFadden received prompt and extensive medical treatment in response to his June 8th injuries; this remains true notwithstanding that much of that care was provided off-site by individuals unaffiliated with Corizon and notwithstanding that a significant portion of the care administered to McFadden at PCJ was provided by Corizon-affiliated personnel other than Girone. This fundamental consideration fails to support – and in fact wholly undermines – McFadden's efforts to obtain relief under Section 1983 based on Corizon and Girone's purported deliberate indifference to his serious medical needs. *See Wisniewski v. Frommer*, --- F. App'x ---, 2018 WL 4776165, at *2-3 (3d. Cir. Oct. 3, 2018) (affirming Rule 12(b)(6) dismissal of Section 1983 medical care claim where "[plaintiff's] allegations confirmed that he had been seen many times by medical providers who exercised professional judgment with respect to his care[.]") (quotations and alterations in original omitted); *Romero v. Ahsan*, No. 13-7695, 2018 WL 6696782, at *18 (D.N.J. Dec. 20, 2018) (no constitutional violation where "the evidence before the Court demonstrate[d] that [plaintiff] received extensive and generally prompt medical treatment for his knee injury."); *Battle v. McGann*, No. 17-12041, 2018 WL 5263279, at *4 (D.N.J. Oct. 23, 2018) ("In light of Plaintiff's multiple treatments and evaluations, it is apparent that the complaint shows only a [non-actionable] difference in opinion over the course of proper medical treatment rather than a complete denial of medical care.").

The only facts alleged by McFadden that even marginally suggest that Corizon and Girone acted with deliberate indifference center around his claims that Girone and other Corizon-personnel refused to give him pain medication in response to his requests upon returning from Saint Joseph's on June 8th[5] and during his first week in PCJ's infirmary upon returning from Saint

---

[5] The Court observes that the veracity of this claim is undermined by the copy of the Encounter

Barnabas. McFadden's pleading, however, fails to contain any factual allegations which plausibly suggest that Corizon and McFadden's purported refusal to immediately administer pain medicine to him was motivated by unconstitutional considerations, *e.g.*, because it was the easier course of action, or that McFadden experienced any tangible residual injuries as a result. *Palakovic*, 854 F.3d at 228; *accord Wilson v. Jin*, 698 F. App'x 667, 671 (3d Cir. 2017) ("Deliberate indifference . . . requires obduracy and wantonness which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.") (internal citations and quotations omitted); *McGinnis v. Hammer*, --- F. App'x ---, 2018 WL 4334104, at *3 (3d. Cir. Sept. 11, 2018) ("conclusory allegation that [physician's assistant] denied [inmate] ibuprofen [for improper motive], rather than for the reasons apparent on the face of the complaint, fails to state a plausible claim for relief.").

Furthermore, McFadden's allegations regarding Corizon and Girone's failure to administer pain medication to him on June 8th and between June 22nd and 29th must be considered within the broader context of McFadden's other factual claims – which, again, make clear that he received prompt and extensive medical care for his burns. It is against this backdrop that the Court concludes that McFadden's complaint fails to plausibly suggest that Corizon and Girone acted with constitutionally-violative deliberate indifference to McFadden's serious medical needs. *Taylor v. Spraga*, 741 F. App'x 884, 887 (3d Cir. 2018) (concluding that "under the circumstances of this case[,]" in which plaintiff, *inter alia*, undisputedly "received alternative treatment for his pain" and was continuously and regularly monitored by prison medical personnel, "the

---

Summary Report prepared by Girone on June 30, 2015 appended to McFadden's February 25th opposition brief at Exhibit B; that document indicates that McFadden was "given Toradol & Percocet" upon his return from Saint Joseph's. (ECF No. 63-5 at PageID: 1554.) Ultimately, however, this evidence, which falls outside of the pleadings, does not impact the Court's current Rule 12(b)(6) analysis.

13

discontinuation of [a] medication to treat [plaintiff's] neuropathic pain condition [was] not actionable as a constitutional violation"). Indeed, in this broader context, it wholly appears that the administration of pain medication by Girone and other Corizon-affiliated medical personnel to McFadden – or lack thereof – speaks to their professional judgment in opting for a particular course of treatment. *See, e.g.*, *Romero*, 2018 WL 6696782, at *15 ("When the plaintiff received some medical care, the court will presume that the care was proper in the absence of evidence that it fell short of professional norms.").

There are a number of other pleading deficiencies in McFadden's *Fourth* Amended Complaint further support dismissal of Count III. First, McFadden's pleading omits many specific factual details that could potentially bolster – or further undermine – the viability of his Section 1983 claim. McFadden, for example, fails to detail the precise times that any of events on June 8th occurred, including when he, *inter alia*, sustained his injuries, arrived at PCJ's infirmary, had an ambulance called on his behalf, was transported in that ambulance from PCJ, arrived at Saint Joseph's emergency center, and was returned to PCJ's infirmary. This dearth of specific information is particularly glaring when all of McFadden's factual allegations indicate that each of the foregoing events occurred when Girone was on-site at PCJ, *i.e.*, in a period that would appear to be far less than twenty-four hours. McFadden's pleading likewise provides no temporal details regarding Girone's alleged actions on that date, *i.e.*, there are no times alleged as to when Girone, among other things, first learned about McFadden's injuries and left PCJ for the day. The limited temporal details that McFadden does provide, *i.e.*, that on June 9th, he complained to a PCJ prison guard about blistering on his body at approximately 9:00 a.m., and was first evaluated by a Corizon-affiliated nurse in response approximately three hours later, at around 12:00 p.m., do not suggest to the Court that McFadden's constitutional rights were violated,

particularly when in the remaining twelve hours of that same day, McFadden was – at unspecified times – subsequently evaluated by a Corizon-affiliated doctor and ultimately transferred to Saint Barnabas's burn treatment unit.

McFadden's pleading also contains conclusory statements that are at odds with the specific facts alleged therein. For example, while McFadden asserts that he received inadequate medical attention in PCJ's infirmary on June 8th, he simultaneously avers that he was transported to Saint Joseph's for emergency medical treatment on that same day. This suggests that McFadden received appropriate and prompt care for his injuries,[6] notwithstanding that McFadden received minimal treatment at the PCJ infirmary before being sent to Saint Joseph's. That McFadden was treated and discharged from that hospital within thirty minutes suggests to the Court that his burns did not initially appear to be as severe as they ultimately turned out to be,[7] particularly as McFadden has not named Saint Joseph's as a defendant and his pleading otherwise fails to clearly state that the medical treatment he received at Saint Joseph's was deficient.

Similarly, McFadden's claim that he was not initially sent to Saint Barnabas for treatment because Corizon wanted to save money disregards several key considerations. First, it wholly "ignores the fact that St. Joseph's is a five-minute drive from [PCJ], whereas St. Barnabas . . . is a

---

[6] In his September 19, 2018 opposition brief, McFadden indicates that he arrived in the burn unit of Saint Barnabas within "24 hours after the accident[.]" (ECF No. 41 at PageID: 1093). That specific detail – which further bolsters the conclusion that McFadden received prompt medical care – is, however, omitted from McFadden's pleading.

[7] In his earlier-filed opposition brief, McFadden confirms that he was diagnosed at Saint Joseph's as having first-degree burns only (*see* ECF No. 41 at PageID: 1093), *i.e.*, "a mild burn characterized by heat, pain, and reddening of the burned surface but not exhibiting blistering or charring of tissues." *See* Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary. Although McFadden declined to add that specific detail to his pleading, that additional fact, if true, would cut against any claim that Girone, Corizon, or any other PCJ-affiliated individual acted with deliberate indifference to a "serious" medical issue on June 8th.

thirty-five minute drive [away]."  (*See* Corizon's Br. in Supp. of Mot. to Dismiss 5 n.5, ECF No. 31-5).  Second, in spite of Corizon's purported pecuniary interest in preventing McFadden from receiving treatment at Saint Barnabas, McFadden's pleading makes clear that Corizon sent McFadden to that hospital for treatment on June 9th, and that McFadden remained at Saint Barnabas for in-patient care for approximately two weeks.  It also bears noting that McFadden has not named Saint Barnabas as a defendant and that McFadden's pleading in no way alleges that his medical treatment at Saint Barnabas was inappropriate or inadequate.

McFadden's Fourth Amended Complaint also includes a number of conclusory statements unsupported by any factual allegations whatsoever.  Indeed, McFadden baldly claims that: (i) "[a]s a direct and proximate result of the denial of medical care, [he] suffered injuries causing permanent disability, permanent significant disfigurement, [and] permanent loss of bodily function[;]" (ii) he has been harmed by Corizon and Girone's general policy and custom "[to deny] medical care[;]" and (iii) he has been harmed by those defendants' simultaneous failure to properly train and supervise other Corizon personnel.  (*See* ECF No. 30 at ¶¶ 157-63).  McFadden's complaint does not provide any specific information about the permanent and ongoing harm he suffers from the burns he sustained on June 8, 2015.  The specific factual allegations in that pleading speak only to the blisters on his hands, arms, and legs as of June 9th; those facts do not permit the Court to reasonably infer that he has any permanent disabilities or scarring from that incident.  McFadden provides even less factual detail about Corizon and Girone's policies, customs, training practices, and supervision methods.  Indeed, the conclusory sentences quoted above represent the only allegations within McFadden's pleading regarding supervisory liability.

For the foregoing reasons, it is clear that McFadden's Fourth Amended Complaint fails to suggest that he received inadequate medical care for June 8th injuries.  That pleading similarly

fails to allege facts to suggest that McFadden or Corizon were deliberately indifferent to his serious medical needs in a manner which violated McFadden's rights under the United States Constitution. McFadden accordingly fails to state a Section 1983 claim against Corizon or Girone. *Watford v. New Jersey State Prison*, No. 16-7878, 2017 WL 131562, at *4 (D.N.J. Jan. 12, 2017) (dismissing Section 1983 inadequate medical care claim where facts alleged in complaint "establish[ed] that [p]laintiff has been treated, continues to receive treatments, and may well receive his desired medication once his doctors are satisfied that such a course is warranted by the diagnostics" and further reiterating that "[p]laintiff's subjective dissatisfaction with the slow course of his treatment is insufficient to support a claim for relief for a violation of his constitutional rights."); *see also Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) (holding that when there are no underlying constitutional violations found, it precludes supervisory and policy-making liability).

### d. Count III is Dismissed with Prejudice

In this case, McFadden has already received numerous opportunities to revise his pleading; despite multiple amendments, his Fourth Amended Complaint still fails to state a cognizable claim for relief under Section 1983. That fact alone supports prejudicial dismissal of Count III. *Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, *2 (E.D. Pa. Dec. 9, 2013) ("Although the grant of a motion to dismiss is usually without prejudice, a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings.") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434-35 (3d Cir. 1997)); *accord Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, *unless* an amendment would be inequitable or futile.") (emphasis

17

added). The additional facts which McFadden belatedly chose to detail in his opposition brief further demonstrate that Count III could not be amended in such a manner as to withstand a motion to dismiss and, thus that further amendment is futile. *See Burlington*, 114 F.3d at 1434 ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.")

In light of the foregoing considerations, the Court dismisses Count III with prejudice. *Haesler v. Novartis Consumer Health, Inc.*, No. 05-372, 2006 WL 2689830, at *5 (D.N.J. Sept. 18, 2006) (dismissing claim asserted in fourth amended complaint with prejudice in resolving Rule 12(b)(6) motion because "no amendment count make [that count] withstand a motion to dismiss"), *aff'd*, 266 F. App'x 173 (3d Cir. 2008); *Callaway v. New Jersey State Police Troop A*, No. 12-5477, 2015 WL 1202533, at *8 (D.N.J. Mar. 17, 2015) (dismissing claim with prejudice where plaintiff already received several opportunities to plead his claims and the underlying circumstances giving rise to that lawsuit had "not substantially changed); *see also In re New Jersey Title Ins. Litig.*, 683 F.3d 451, 462 (3d Cir. 2012) (district court did not abuse its discretion by dismissing action with prejudice on grounds that leave to amend would be futile).

e. **The Court Declines to Exercise Supplemental Jurisdiction Over McFadden's Remaining State Law Claims**

In resolving the present motions, the Court again emphasizes that Count III, which seeks relief under federal law based on the purported violation of a right guaranteed by the United States Constitution, is the only federal cause of action in McFadden's pleading; Count IV seeks relief under New Jersey law based on the purported violation of a right secured by New Jersey's Constitution. Were this Court to conclude that dismissal of Count III was inappropriate – and it does not – the Court would likewise be compelled to conclude that dismissal of McFadden's parallel state law claim would be inappropriate. *See Bayette v. Ricci*, 489 F. App'x 540, 543 n. 2

(3d Cir. 2012) (utilizing same analysis for plaintiff's state and federal denial of medical care claims "because the test for cruel and unusual punishment under the New Jersey state Constitution 'is generally the same as that applied under the federal Constitution.'") (citation omitted).

That said, for the reasons already detailed in this Opinion, the Court concludes that prejudicial dismissal of the lone federal count in McFadden's Fourth Amended Complaint is appropriate. When a "district court [dismisses] all claims over which it has original jurisdiction[,]" it "may decline to exercise supplement jurisdiction" over any remaining state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, a court may "remand a properly removed case to state court whenever all federal claims have been deleted." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 359 (1988). The Court considers the following factors in determining whether remand is proper: manipulation of the forum, judicial economy, convenience, fairness, and comity. *Id.*

The Court declines to exercise supplemental jurisdiction over McFadden's remaining state law claims, including Count IV, and accordingly declines to rule on Corizon and Girone's motions to dismiss with respect to that claim. McFadden's pendent state law claims, including Count IV, will instead be remanded to state court. The following considerations support this result: (i) it is Corizon who – over McFadden's objections – initially removed this matter to federal court; (ii) Corizon's removal in the first instance was improper – and this matter was accordingly already remanded once – because Corizon did not obtain the consent of all defendants; (iii) after this action was thereafter removed to federal court a second time – with Corizon's consent – it was Corizon who took the position that McFadden's current pleading failed to adequately plead any federal cause of action via the filing of its present Rule 12(b)(6) motion; (iv) McFadden has opposed defendants' removal of this matter from state court on both occasions; and (v) Girone has only recently joined this litigation via his January 17, 2019 filing of the present Rule 12(b)(6) motion.

19

## V. CONCLUSION

For the reasons detailed above, Corizon and Girone's respective Rule 12(b)(6) motions to dismiss are granted as to Count III of McFadden's Fourth Amended Complaint only; that count is dismissed with prejudice. The Court will not exercise jurisdiction over McFadden's additional state law claims, including Count IV, and will instead remand this matter for adjudication in state court. An appropriate Order follows.


Date: March 1, 2019                                        s/Katharine S. Hayden
At Newark, New Jersey                          KATHARINE S. HAYDEN
                                                                           United States District Judge